# United States District Court
## for the Northern District of Oklahoma

Case No. 24-cv-87-JDR

JMLB Industries, LLC,

*Plaintiff,*

versus

Obsidian Specialty Insurance Co., *and* BancFirst Insurance Services, Inc.,

*Defendant.*

## OPINION AND ORDER

Plaintiff JMLB Industries, LLC, lost its stock of cannabis due to heat, moisture, and a lack of sufficient air supply. JMLB filed a claim with its insurer, Defendant Obsidian Specialty Insurance Co., to cover the loss. After Obsidian refused to cover JMLB's claim, JMLB sued both Obsidian and BancFirst Insurance Services, Inc., JMLB's insurance agent, in Tulsa County District Court. JMLB alleged that Obsidian breached its insurance contract and breached the duty of good faith and fair dealing it owed under that contract. Additionally, JMLB claimed that BancFirst negligently procured insurance for JMLB. Obsidian removed this action to federal court claiming that JMLB fraudulently joined BancFirst—a non-diverse party—to escape diversity jurisdiction. JMLB moved to remand, disputing Obsidian's claims of fraudulent joinder. Obsidian contends that JMLB's claim against BancFirst is

not ripe and, consequently, that it lacks a valid cause of action on which it could succeed in state court. The Court concludes that JMLB did not fraudulently join BancFirst and that the Court cannot disregard JMLB's claim against BancFirst. Because this Court does not have diversity jurisdiction, the Court grants JMLB's motion to remand [Dkt. 29].

I

JMLB is an Oklahoma company that cultivates cannabis. Dkt. 29 at 1–2.[1] As part of its business, JMLB keeps stock of cannabis in various stages of growth and stores harvested product at its warehouse. *Id.* at 1. JMLB instructed its insurance agent BancFirst, an Oklahoma-based company, to procure an "all risk" insurance policy that would protect JMLB's stock and inventory "from direct, physical loss due to heat, moisture, and lack of sufficient air supply." *Id.* at 2. JMLB contends that it expected the coverage to apply regardless of whether the loss arose directly, or indirectly, from a power outage. *Id.*

In June 2023, heat, moisture, and a lack of sufficient air supply caused direct physical loss to JMLB's stock. *Id.* at 1. JMLB filed a claim with Obsidian to cover the loss. *Id.* at 2. Within a month, Obsidian denied JMLB's claim. *Id.* JMLB demanded reconsideration of its claim, and Obsidian again refused to cover the loss. *Id.*

JMLB sued Obsidian and BancFirst in Tulsa County District Court alleging that Obsidian breached its contractual obligations under the insurance policy. *Id.* JMLB also alleges that BancFirst negligently procured JMLB's insurance policy. *Id.* at 2. Obsidian removed the action to this Court on diversity of citizenship grounds, arguing that, although BancFirst and JMLB are citizens of the same state, the Court should disregard BancFirst's citizenship because JMLB fraudulently joined BancFirst to defeat diversity jurisdiction. Dkt. 34 at 8. In response, JMLB moved to remand, asserting that

---

[1] All citations use CMECF pagination.

No. 24-cv-87

BancFirst's Oklahoma citizenship prevents this Court from exercising jurisdiction. Dkt. 29 at 2.

## II

Federal courts have limited jurisdiction. *See Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). Obsidian, the party invoking federal jurisdiction, has the burden to establish jurisdiction. *See id.*; *Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991). Federal courts have diversity jurisdiction over matters between citizens of different states if the amount in controversy exceeds "$75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a). Each defendant must satisfy the citizenship requirements. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). If not, diversity is destroyed, and the federal court does not have jurisdiction. *Id.*

The removing party must allege sufficient facts to establish subject-matter jurisdiction. *Penteco Corp. Ltd. P'ship—1985A*, 929 F.2d at 1521. Here, there is no dispute that the amount in controversy is met. Obsidian acknowledges there is not complete diversity but asserts that the Court should disregard BancFirst's citizenship under the doctrine of fraudulent joinder.

A party cannot prevent removal through fraudulent joinder of a non-diverse defendant with no real connection to the controversy. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). If a plaintiff fraudulently joins a non-diverse defendant, a federal court may disregard the non-diverse defendant's citizenship and exercise jurisdiction over the dispute. *See Dutcher v. Matheson*, 733 F.3d 980, 987–88 (10th Cir. 2013) (citing *Smoot v. Chicago, Rock Island Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir. 1967)). To avoid remand on fraudulent joinder grounds, "the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher*, 733 F.3d at 988. Obsidian relies on the second prong of *Dutcher*. *See* Dkt. 34 at 13.

3

No. 24-cv-87

"[T]he standard for showing fraudulent joinder is [a] stringent [one.] [J]oinder may be considered legitimate even when the predicate claim would not survive on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Cross v. Clemons*, No. CIV-21-00743-PRW, 2021 WL 5770171, at *1 (W.D. Okla. Dec. 6, 2021). So long as a reasonable basis exists to believe that plaintiff could succeed in "at least one claim against the non-diverse defendant," the Court must consider the citizenship of the non-diverse party. *Nerad v. AstraZeneca Pharms., Inc.*, 203 F.App'x 911, 913 (10th Cir. 2006). That "claim need not be a sure-thing." *Id.* at 913. "The Court resolves doubtful cases in favor of remand." *McDonald v. CSAA Ins. Exch.*, No. CIV-16-336-R, 2017 WL 887108, at *2 (W.D. Okla. Mar. 6, 2017).

### III

Although the claim against BancFirst may not be a sure thing, it is colorable, and the Court cannot say that it has no chance of success. Oklahoma courts have permitted negligent procurement claims to proceed against agents that have failed to obtain the insured's requested insurance coverage.

In Oklahoma, "the weight of authority supports imposition of liability on [an] agent for failure to procure insurance under both contract and tort theories." *A-OK Const., Inc. v. McEldowney, McWilliams, Deardeuff & Journey, Inc.*, 1992 OK CIV APP 66, ¶7, 844 P.2d 182, 183–84. The agent has a duty "to exercise reasonable care and skill in performing its task, i.e. procuring insurance and making any necessary corrections or adjustments after a policy is issued." *Swickey v. Silvey Cos.*, 1999 OK CIV APP 48, ¶13, 979 P.2D 266, 269. Further, that "agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss." *Id.*

Obsidian does not deny that claims against agents are viable under Oklahoma law. Instead, it argues that the Court should disregard JMLB's claim against BancFirst because it is not yet ripe and may never become ripe.

Specifically, Obsidian argues that a court must first find that JMLB's policy failed to cover the loss before JMLB may sue BancFirst for failing to procure adequate insurance. Obsidian contends that because the success of JMLB's action against BancFirst is contingent upon the result of the claim against Obsidian, JMLB's action against BancFirst is not ripe.

To prevail on a negligent procurement claim—and demonstrate the claim's ripeness—JMLB would need to show both that BancFirst did not procure insurance as promised and that JMLB suffered a loss. *See id.* In Oklahoma, state courts require certainty of loss before a negligence claim becomes viable. But Oklahoma courts have never expressly held that a negligent procurement claim does not accrue until a related insurance claim is resolved. In fact, in a statute of limitations question, the Oklahoma Supreme Court found that injury in a negligence claim is certain as soon as plaintiffs knew or should have known of their damages. *See MBA Com. Const., Inc. v. Roy J. Hannaford Co., Inc.*, 1991 OK 87, ¶¶5–6, 18, 818 P.2d 469, 471, 474 (MBA sued for damages after its invoices were rejected. Despite defendant's statute of limitations argument, the court held that the injury became certain when MBA "knew or should have known that they would not be paid").

The Court rejects Obsidian's argument that claims against BancFirst should be disregarded because they are contingent. "[T]he Federal Rules of Civil Procedure govern the mode of a civil action after it is removed from state court." *Pedernal Props., LLC v. Marsh USA, Inc.*, Case No. 22-CV-151-TCK-CDL, 2022 WL 16973250, at *2 (N.D. Okla. Nov. 16, 2022); *see* Fed. R. Civ. P. 81(c). Additionally, Fed. R. Civ. P. 18(b) "specifically provides that contingent claims are permissible." *Pedernal Props., LLC*, 2022 WL 16973250, at *2 (citing Fed. R. Civ. P. 18(b) which states "[a] party may join two claims even though one of them is contingent on the disposition of the other.").[2] This

---

[2] The court in *Pedernal Props.* named Fed. R. Civ. P. 81(c) in this sentence, but the quoted rule language derives from Fed. R. Civ. P. 18(b).

Court has previously permitted contingent claims such as the ones presented here to proceed simultaneously. *See Pedernal Props., LLC*, 2022 WL 16973250, at *2. In *Pedernal Properties*, the court recognized that the insured's claim against its broker would not "accrue until after resolution of the claim against [the insurance company]." *Id.* The court nonetheless held that the Federal Rules of Civil Procedure allow contingent claims to proceed simultaneously. *See id.*; *see also Cross v. Clemons*, No. CIV-21-00743-PRW, 2021 WL 5770171, at *1 (W.D. Okla. Dec. 6, 2021) (stating a joinder might be legitimate "even when the predicate claim would not survive on a motion to dismiss"). In this case, as in *Pedernal Properties*, JMLB's claim for negligence against BancFirst can proceed simultaneously with its claim against Obsidian. The contingent nature of the negligence claim against BancFirst does not affect the validity of that claim for purposes of determining diversity jurisdiction.

Furthermore, Obsidian's ripeness argument is the type of nuanced argument that does not ordinarily support a finding of fraudulent joinder. *See Johnson v. Shelter Mutual Ins. Co.*, No. 23-CV-351-RAW-GLJ, 2024 WL 1009548, at *2 (E.D. Okla. Feb. 16, 2024) (stating "a claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.") To the extent that Oklahoma law leaves open the validity of negligence procurement claims like this one, federal courts have held that insurers alleging fraudulent joinder could not prove that the insured had no chance of recovery against the agent. *See, e.g., Yeary v. Safeco Insurance Co. of America*, No. 22-CV-0250-CVE-SH, 2022 WL 3447120, at *3 (N.D. Okla. Aug. 17, 2022); *Bartholomew v. State Farm Fire & Cas. Co.*, No. CIV-22-881-J, 2022 WL 22879674, at *2 (W.D. Okla. Dec. 16, 2022).

The doctrine of fraudulent joinder exists to prevent parties from evading federal jurisdiction by asserting clearly fraudulent claims that lack any chance of success against a non-diverse party. Obsidian does not argue that the claim against BancFirst is a sham, only that it has not yet accrued. Because JMLB and a properly joined defendant, BancFirst, are not completely

diverse, the requirements for diversity jurisdiction were not met at the time of removal. The Court, therefore, lacks diversity jurisdiction over this case, and JMLB's motion to remand [Dkt. 29] is granted.

Dated this 14th day of March 2025.

_____
John D. Russell
*United States District Judge*